**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

CARL JAMES CAVINESS                                                    **PLAINTIFF**

v.                                        **CIVIL ACTION NO. 3:09-CV-361 - LRA**

BRIAN LADNER, ET. AL.                                                **DEFENDANTS**

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS CAUSE is before the Court on the Motion for Summary Judgment filed by Defendant Brian Ladner,[1] and the Motion for Summary Judgment filed by Dr. Rolando Abangan, Sandra Atwood, The GEO Group, Inc. ("GEO"), Bart Grimes, Carla Horne, Vonnie Neal, and Ashley Nelson.[2]  Also before this Court is Plaintiff Carl James Caviness's "Declaration in Opposition to Defendants' Motion for Summary Judgment/ Motion for Cross Summary Judgment."[3]  The Court has considered all the pleadings, Caviness's sworn testimony given at the omnibus hearing on February 8, 2010, his medical records (containing over 2600 pages), and the applicable law.  This review compels the Court to find that the motions are meritorious and should be granted.

1.    **<u>FACTS</u>**[4]

Jurisdiction of this case is based upon 42 U.S.C. § 1983.  At all relevant times, Caviness was an inmate housed in the custody of the Mississippi Department of Corrections ("MDOC") at the East Mississippi Correction Facility ("EMCF") in Meridian,  Mississippi.  He was confined at EMCF from May 8, 2009, until moved by MDOC to the Central Mississippi Correctional Facility in Pearl, Mississippi, on January

---

[1]ECF No. 137, filed July 28, 2011.

[2]ECF No. 140,  filed July 28, 2011, and Supporting Memorandum filed March 16, 2012, ECF No. 179.

[3]ECF No. 169, filed December 7, 2011.

[4]The facts are taken primarily from Plaintiff's Complaints, his omnibus hearing testimony, and his medical records, and are presented in a light most favorable to Plaintiff.

9, 2012.[5]  Plaintiff was transferred to Parchman on or about March 15, 2012.[6]  Defendants named in this lawsuit are officials at EMCF.  Plaintiff had only been housed at EMCF for six weeks when he filed his complaint against the EMCF officials on June 22, 2009 [May 8, 2009- June 22, 2009].  Although the period of time actually covered by the Complaint was this six-week period, the Court has considered Plaintiff's medical care through the date of the submitted records, September 2010, but not thereafter.[7]

Plaintiff was born on January 31, 1958, and is 54 years old.  He served in the Army from 1979 to 1983, and sustained an injury to his knee during his service.  He had a total knee joint replacement approximately 25 years ago.  According to Plaintiff, he was told that the knee would last 20 years at most.  Plaintiff's complaint primarily involves the medical care that he receives for ailments related to his knee and EMCF's refusal to allow him another knee replacement surgery.

Plaintiff has been evaluated by the Department of Veteran's Affairs ("VA") for status post left knee replacement with mild anterio-medial instability and moderate degenerative joint disease with recurrent surgery and joint effusion.  Previously, he was assessed a 30 percent disability rating that was subsequently increased to 60 percent on October 26, 2010.  Plaintiff argued at the omnibus hearing that the Veteran's Administration hospital would perform a knee replacement on him; he charged that

---

[5]*See* ECF No. 176.

[6]The Clerk received notice from Caviness of his change of address on March 27, 2012, ECF No. 180.

[7]The Court notes that some of Defendants named herein were also sued by Caviness in *Caviness v. Atwood, et al*, Cause No. 4:11cv3-MTP, and this cause is still pending.  The issue of Caviness's medical care for his knee is before Judge Parker in that case, and it apparently covers a later time period.  Caviness also filed a complaint against other EMCF officials in *Caviness v. Puckett*, 4:10cv93-FKB; it was dismissed on the merits by Order filed March 21, 2012 [ECF No. 100].

EMCF would not transport him for the surgery.  He requested the Court to order EMCF to take him to the VA for surgery.

Plaintiff has sued several persons at EMCF as Defendants in this case.  He named Defendant Atwood, supervisor of the medical clinic, claiming that she did not obtain his medical records as he requested.  She would not change his medications such that his stomach would not be upset, nor would she allow him to receive medication on a "keep on person" ("KOP") basis.  KOP would allow Plaintiff to consume medication on an as-needed basis; he could take his medicine when he ate so that his stomach would not be upset.  Plaintiff sued Defendant Horne, a mental health counselor, because she would not have his housing assignment changed when he requested to be moved.  Plaintiff named Defendant Neal, a nurse, because she refused to allow him a supportive wrist brace for his carpal tunnel syndrome.

Plaintiff named Defendant Dr. Abangan, a clinic physician, because he denied Plaintiff proper medical care by failing to order a proper mattress and shoes and by not allowing him KOP status.  He also contends that Dr. Abangan told him the VA would not treat him, and that MDOC would not pay for a knee replacement.  Defendant GEO Group, Inc., was named  because of its policy against allowing KOP for medication distribution.

Plaintiff claims that MDOC has erroneously calculated his time to serve.  Because of his multiple grievances against officials, Plaintiff contends that he has experienced retaliation by prison officials.  In connection with these claims, he sued: Defendant Nelson, his caseworker, because she failed to get him reclassified and refused to help him; Defendant Grimes because there are no locks on the mailboxes, and he refused to move Plaintiff when Plaintiff requested to be moved; and, Defendant Ladner, because he punished Plaintiff for filing grievances by not granting him earned MET time that would count towards early release.  Defendant Ladner also punished him by denying him access to a fatherhood class.

2.     **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986).  The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes.  *Id*. at 322.  There is a genuine factual dispute between the parties only "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

3.     **LEGAL ANALYSIS**

   A.     **Classification**

Plaintiff's only claims against Defendants Nelson and Horne are based upon his classification to D custody.  Plaintiff charges that he was classified improperly and not moved when he felt his life was in danger.  At the omnibus hearing, Plaintiff stated his claims against Ms. Nelson and Ms. Horne as follows:

> THE COURT: Okay.  Ashley Nelson?
>
> THE PLAINTIFF: Ms. Nelson, she classified me in A custody.  I can't figure out what I'm doing in a C custody environment.
>
> THE COURT: What did Nelson have to do with it?
>
> THE PLAINTIFF: She is the case manager.  She's the person I'm supposed to go to to help me with these problems.  If she can't help me, she's supposed to direct me to who I'm supposed to [ask].
>
> THE COURT: Does she have authority to classify you?

THE PLAINTIFF: I guess so.  She did it, she's been doing it.

THE COURT: She keeps changing your custody status?

THE PLAINTIFF: She was my new case manager but I asked her to get me moved because I didn't like where I was at; she did not get me moved.  She said I needed to talk to Ms. Horne.

THE COURT: What's her job?

THE PLAINTIFF: Mental health counselor or something. All of them are aware about this knee because it's in the record.  Nobody wants to move me.

THE COURT: So Ms. Horne wouldn't help you get moved?

THE PLAINTIFF: Ms. Horne never answered yes.  She didn't answer my request I sent her asking her to move me, telling her I didn't feel safe here.  Telling her I'm up and down these stairs and y'all need to get me from up and down these stairs and they couldn't do it.

The Court of Appeals for the Fifth Circuit has held that a prison inmate does not have a protectable liberty or property interest in his custody classification.  *Harper v. Shows*, 174 F.3d 716, 719 (5th Cir. 1999); *see also Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992), citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.), cert. denied, 488 U.S. 985 (1988).  With no constitutionally protected interest at stake, Plaintiff cannot state a due process claim under Section 1983.  *See Meachum v. Fano*, 427 U.S. 215, 223-24 (1996).  This issue may only be examined in connection with Plaintiff's medical care regarding his knee and for which Defendants Nelson and Horne are not responsible.  The claims regarding Plaintiff's classification asserted against Defendants Nelson and Horne shall be dismissed.

**B.** **Retaliation**

Plaintiff complains that he has experienced retaliation due to filing grievances regarding the medical treatment of his knee and the alleged miscalculation of his time.  He charges that Defendant Ladner, Deputy Warden at Central Mississippi Correctional Facility ("CMCF"), is responsible for the experienced retaliation.  In response to these

allegations, Defendant Ladner filed a Motion for Summary Judgment[8] asserting that he is entitled to qualified immunity in this case.

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). The immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 457 U.S. 335, 341 (1986). To overcome the immunity, a plaintiff must show that there has been a violation of a clearly established constitutional or statutory right and whether the official's actions violated that right to the extent that an objectively reasonable person would have known. *Id*., omitting citation. Plaintiff "has the burden to rebut the qualified immunity defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005).

Plaintiff contends that retaliation occurred in the form of denying him earned MET time and access to a fatherhood class. Testimony at his omnibus hearing was as follows:

> THE COURT: Let's start with Mr. Ladner.
>
> THE PLAINTIFF: I'm confused about my time. I got issues with my time. The head case manager is in the other building. I go to her, I take my papers. I want to straighten out my time. She doesn't know anything about time [and] I wrote Warden Ladner saying make this case manager do her job. They called me in the office one day and he said sit your ass down and shut up ... I ought to put you in the hole ... for lying.
>
> I hadn't ever had the problems I'm having now and continue to have since I filed that grievance. I tried to go to school and get some MET time, I couldn't do that. I pushed a guy in the wheelchair for eight months. The guy [that] pushed him before got MET time [but] when it comes to me I couldn't get MET time.
>
> THE COURT: Who's responsible?
>
> THE PLAINTIFF: Warden Ladner.

---

[8]ECF No. 137.

THE COURT: And you're saying that because you challenged your time?

THE PLAINTIFF: Because I filed a grievance.

THE COURT: That you were denied the fatherhood class?

THE PLAINTIFF: Yes, ma'am.  I'm the first one on the list.

THE COURT: And you believe that Ladner kept you from going to the fatherhood class?

THE PLAINTIFF: Well that's correct.  I went in there and Ladner had the list, my name was the first one on the list and he said we're not ready for you yet or something.  So he did keep me from it.

THE COURT: Was there some agreement that you would get [MET time for pushing the wheelchair]?

THE PLAINTIFF: Banks promised me I would get it but Ladner never would sign off on it.

Plaintiff has only offered conclusory allegations against Defendant Ladner of any retaliatory activity in denying him earned time and access to a fatherhood class.  "To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *see also  Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (prisoner must demonstrate actions or a series of events from which retaliation can be inferred).

The law is well settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program.  *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). Hence, Caviness has failed to allege a specific constitutional right to MET or the fatherhood class, and no further analysis of Ladner's qualified immunity defense is necessary.  *Saucier v. Katz*, 533 U.S. 194, 198 (2001).

Plaintiff also alleges that Defendant Grimes retaliated against him by failing to move him when Plaintiff expressed fear for his safety.  Plaintiff's testimony and allegations in the Complaint fail to state a cause of action against Defendant Grimes either for retaliation or for failure to protect him.  There is no indication that Plaintiff was in danger, or was harmed, and the movement of prisoners among facilities, or within a

facility, is the prison's decision.  A prisoner has no constitutionally protected interest in being housed in a particular facility.  *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996) (citations omitted).  The decision to transfer Caviness within a facility, or from one facility to another, is within the discretion of the prison officials.  Under the circumstances stated by him, Plaintiff has failed to allege an actionable constitutional violation against Defendant Grimes.  The claims against both Defendants Ladner and Grimes shall be dismissed.

### C.   **Medical Care**

The primary focus of Plaintiff's complaint in this case is the medical care he received for his knee.  At his omnibus hearing, Plaintiff described his specific claims against Defendants as follows:

> THE COURT: You have a knee problem?
>
> THE PLAINTIFF: I have a total knee joint replacement done some 20-something years ago when the VA did it.  They told me it was going to last with limited use 20 years maybe.  It's been [longer].  It's gone.  They know it's gone.  They said the VA, the VA told me they're going to fix it because it's service connected - they always take care of it.  I told them to send me out there.  Let them fix it.  They won't do it and I hurt.
>
> THE COURT: You sued Sandra Atwood; why did you sue her?  What did she do or not do?
>
> THE PLAINTIFF: Okay, she brought my medicine.  She made the decision to not give me any other treatment but that stuff that's hurting me.  Hurting my stomach.
>
> THE COURT: Okay.  So you disagreed with the medication that she prescribed for or gave to you?
>
> THE PLAINTIFF: Yes, ma'am.  The doctor at CMCF was told that Indocin was hurting my stomach.  That's why she changed the medicine. [Atwood] made the decision.  She signed the sick call so I figured she was making the decisions.
>
> THE COURT: Okay.  Tell me why you're suing Dr. Abangan?
>
> THE PLAINTIFF: I need to see a specialist.  I need to go to the VA.  He has been telling me the VA would not treat me.  He finally told me MDOC would not pay for me to have the knee surgery ... because I hurt my knee before I came to prison.  I can't tell [him] what to do.  I can ask you to give me a snack bag before pill call ... I can ask you to help me get some shoes [and] a mattress and he won't do it.

In connection with Plaintiff's claims, and in support of their dispositive motions, Defendants have produced his VA medical records, containing over 1900 pages [ECF No. 182], as well as his MDOC medical records, containing over 700 pages [ECF No. 183]. In support of their motion, Defendants Geo Group, et. al., have also presented the March 16, 2012, Affidavit of Sandra Atwood, R.N.,  [ECF No. 181], who is a registered nurse and was the Health Services Administrator for EMCF until her retirement in December 2010. Ms. Atwood was also the custodian of the medical records at EMCF.  She reviewed the extensive EMCF medical records of Caviness and presented a narrative regarding the treatment Caviness received at EMCF for his knee.  Her summary does not include his mental health records, dental records, or other records not pertinent to his claims at issue herein.

In response to this evidence, the Court has considered all of Caviness's written pleadings and his omnibus testimony.  To defeat a summary judgment motion, he must rely on specific evidence in the record and articulate the precise manner in which that evidence supports his claim. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

Caviness asserts that he had a total knee joint replacement more than 20 years ago. He alleges that the medical care he has received at EMCF for his knee problems is constitutionally inadequate, and that these Defendants have been deliberately indifferent to his serious medical needs.  He alleges that Dr. Abangan, Nurses Atwood and Neal, and the GEO group are responsible for the treatment he receives and are responsible for his inability to get care at the VA hospital by a specialist.

According to Ms. Atwood, and the medical records, Plaintiff's treatment began soon after his arrival at EMCF in May 2009.  His first medical request was filed June 8, 2009, and he complained of arthritic pain.  He was advised that "arthritis is chronic and nothing controls the problem–Indocin is about the only thing that helps and you have that."  The Court notes that after that initial medical visit, Caviness filed his complaint in this cause, on June 22, 2009.

After Caviness filed his complaint, his medical records indicate that he was seen by medical personnel, primarily physicians, for his knee problems, **44** times beginning July 15, 2009, and ending September 29, 2010.[9]  Until about July 2010, Dr. Abangan attempted to treat Plaintiff with Indocin, noting on occasion that his knee was stable with no fluid or inflammation.  On December 24, 2009, he noted that a knee replacement would not be beneficial for Caviness.

Caviness was examined by the VA on March 8, 2010, in connection with his Compensation and Pension Exam Report.  X-rays were performed, and the VA reported that he had "severe degenerative joint disease of the left knee with moderate to severe degree of pain and dysfunction."   In April 2010, an EMG/Nerve Conduction study was performed at Rush Foundation Hospital.  Impressions from that study were normal, except there was "electrophysiologic evidence of the following: peroneal neuropathy at the knee, concomitant left L5/S1 radiculopathy cannot be excluded."

After that study, Caviness made numerous requests to see a specialist.  The records confirm that EMCF attempted to have the VA treat Caviness in July 2010, but the VA confirmed that it would not treat inmates.  In September 2010 EMCF attempted to have a local orthopedic surgeon treat Caviness, but that physician also refused to do so.  Finally, Dr. Abangan recommended on September 16, 2010, that Caviness be evaluated as to whether he needed a "revision of the old knee replacement."  The medical records end in September 2010, over a year after the period covered in the complaint ended.

The medical records generally confirm that Dr. Abangan attempted to treat Plaintiff's arthritic knee in a conservative manner during his first year at EMCF.  Beginning in about April 2010, EMCF attempted to obtain specialist care but had difficulty doing so.  Dr. Abangan did not recommend that Caviness's knee be evaluated for replacement until September 2010.  Plaintiff's medical care thereafter is the subject of

---

[9]He was also treated numerous other times for mental health issues and for other medical conditions.  In its review of the medical records, the Court has focused primarily on the treatment for his knee.

another complaint filed by him in this Court in 4:11cv3. Plaintiff is no longer incarcerated in the custody of these Defendants, so no injunctive relief could be granted in this case.[10]

Ms. Atwood stated in her affidavit that Caviness was not denied any necessary medical care. "While he may not have always agreed with the care which was provided, Inmate Caviness has been continuously provided care at the EMCF which was medically appropriate and consistent with his medical needs," according to Ms. Atwood. She concluded that appropriate care was provided him when he had a condition that necessitated care, "albeit not always exactly in the way that inmate Caviness wanted it or when exactly he wanted or may have believed he needed it."

Deliberate indifference to a prisoner's serious medical needs is an actionable Eighth Amendment violation under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976). The standard for finding "deliberate indifference" is a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The medical records confirm that Caviness was treated on a regular and consistent basis by these Defendants, and in a timely fashion. He was treated by numerous physicians, counselors, nurses, and other medical personnel during his incarceration at EMCF. His large medical record indicates that his medical needs were not ignored by Dr. Abangan, or any Defendant. They simply did not provide him treatment by an orthopedic specialist or knee replacement surgery, which is what he wanted. Instead, they provided him with conservative care, using pain medications for his knee problems.

The law does not allow this Court to be a "monitor" for an inmate's medical care. Physicians and medical personnel are in charge of the treatment of inmates. It is only in extreme cases that this Court could find that the care given violated an inmate's constitutional rights. This is especially the case when the records confirm that an inmate

---

[10]In his request for relief, Caviness asked to be transferred from EMCF, in addition to being transferred to the VA for knee surgery. He also asked for $250 per day for his pain.

was treated and examined on such a regular basis for his complaints and when the Court is asked to "second-guess" a physician.

In this case, Caviness disagreed with his treatment and asked repeatedly to see a specialist. He framed his complaint in the terms of needing to be taken to the VA for surgery, but he cannot dispute that the VA refused to treat him other than for assessment purposes. Plaintiff is advised that a mere disagreement with the nature of the treatment provided does not establish deliberate indifference. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Further, a prisoner is not entitled to medical treatment of his choosing simply upon request. *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). Although Dr. Abangan eventually did recommend that Caviness be evaluated for knee replacement, the records confirm that EMCF officials were having difficulty finding a specialist who would treat inmates. As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982).

In *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), the Court of Appeals for the Fifth Circuit summarized the case law regarding the standard of "deliberate indifference" to the medical concerns of prisoners in part as follows:

> ...A prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" "Deliberate indifference 'is an extremely high standard to meet.'"

*Id.* at 346 (citations and footnotes omitted).

In this case, Plaintiff cannot show that he was ever at risk of serious bodily harm. Although he was in pain due to his knee, his condition did not deteriorate due to the conservative treatment recommended by Dr. Abangan. As the Fifth Circuit stated in *Gobert*, whether or not additional treatment is required is a "classic example of a matter of medical judgment." *Id.* These Defendants did not refuse to treat him, did not ignore his complaints, and did not intentionally treat him incorrectly. "Deliberate indifference" is an extremely high standard to meet, and Caviness cannot meet the standard under these circumstances.

Plaintiff sued Defendant Neal because he contends she refused to give him a brace to support his hand due to carpal tunnel syndrome. He sued Defendant GEO because of its KOP policy. The law does not require a KOP policy, and there is nothing in the medical records to indicate a brace was prescribed and denied. Under these circumstances, Caviness has not shown beyond mere conclusory allegations that he has an actionable claim against Defendants Neal or GEO. Although he contends that Defendant Atwood refused to give him medications that would not hurt his stomach, this is insufficient under his medical circumstances to support a finding of deliberate indifference.

Caviness's major claims are that EMCF did not provide him with an orthopedic specialist and did not provide knee replacement surgery for him. Yet, the failure to refer a prisoner to a specialist under these circumstances does not establish deliberate indifference to his serious medical needs. *See, e.g., Davidson v. Dep't Criminal Justice,* 91 Fed.Appx. 963, 965 (5th Cir.), *cert. denied*, 543 U.S. 864 (2004). The Court finds that whether or not a knee replacement should be performed is within the medical judgment of the prison's treating physician. Absent a showing of deliberate indifference regarding the medical decision of the physician, as is the case with Dr. Abangan, no constitutional claim has been stated.

**4.    CONCLUSION**

The Court finds that there are no genuine issues of material fact in this case regarding any of Plaintiff's claims against these Defendants, and his complaint, as amended is hereby dismissed with prejudice.

The Court further finds that Defendants are entitled to a judgment at law, and their Motions for Summary Judgment are hereby granted.  Plaintiff's Cross Motion for Summary Judgment is hereby denied.

Final Judgment in favor of all Defendants shall be entered.

SO ORDERED, this the29th day of March, 2012.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

.